## Blackwell *versus* Cameron.

*Decree in partition, who are estopped by.—Effect of general appearance*
*for several defendants.*

Where, in a writ of partition, a part owner of lands was named, but was omitted in the *narr.*, and a decree was made by the court founded on the *narr.*, which decree was set aside by consent of the parties, and afterwards reinstated by agreement of the parties, except the said part owner, to whom no notice was given : *Held*, that notwithstanding the appearance of counsel for all the defendants—this part owner among them—he was not estopped from showing these facts in evidence in an action of ejectment for the land.

Error to the Common Pleas of *Lawrence county.*·

This was an action of ejectment in the court below, brought by Alexander Cameron and Allen Cameron against James Blackwell, to recover a tract of land in Shenango township.

The material facts of the case will be found in the opinion of this court. The main point in controversy was as to the conclusiveness of a decree of partition on those who were parties to the proceeding, under which a division line was run by the inquest appointed by the Common Pleas, after the confession of judgment *quod partitio fiat.*

The court below, in deciding on a portion of the testimony offered by the defendant, determined that such decree was final and conclusive on all the parties to the action ; which was the main error assigned here by the defendant, after a verdict and judgment against him.

*L. L. McGuffin* and *D. S. Morris*, for plaintiff in error.

*L. Taylor*, for defendants in error.

The opinion of the court was delivered, January 14th 1864, by

Thompson, J.—On the trial of this ejectment, the defendant below, now plaintiff in error, offered to show that the land in controversy lay north of the division line of the tract, as established between the original owners, and by which the land on either side had always been held ; and that as the partition under which the plaintiffs claim the land, had reference and was applicable only to the south half of the whole tract, it could not have been embraced by those proceedings. The offer was overruled, as I understand, on the ground that the plaintiff in error was a party to the proceedings to divide the south half of the tract among the tenants in common who owned it ; and that in these proceedings a line having been run by the inquest, including the land in controversy and a final decree, it was conclusive on all parties to the proceedings, and could not be set aside collaterally, by any of the parties to them.

[Blackwell *v.* Cameron.]

Had the facts been as substantially true as literally, I grant it might be a difficult task to expose the error of the ruling, but we think they were not.

The plaintiff in error was joined as a defendant with others in the writ of partition, and was served by the sheriff. Counsel appeared for all the defendants generally. In the caption of the *narr.*, the plaintiff in error was named with the other defendants as being summoned to answer the demandant. This was formal. But when the *narr.* proceeds, setting forth the titles of the demandant and of his co-tenants, the plaintiff in error is not described at all as a co-tenant. The demandant avers title to two-fifths; alleges one-fifth to be in William McConnell and wife in right of the latter; one-fifth in the heirs of Robert Kerr, deceased, and another fifth to be in Thomas Palmer and wife, and that they and he hold together as co-tenants, among whom he desires to have partition in proportion to their interests, which the defendants refuse. Blackwell was here in fact dropped, as having no interest, unless indeed it might be shown by some skilful arithmetician, that there were more than five-fifths in one whole constituted of fifths. Judgment *quod partitio fiat* was confessed on this *narr.* The meaning of which was, that it appearing that the title of the tenants in common was as set forth, the court allowed judgment to be entered, that partition be made between them. It would have saved trouble if the counsel confessing the judgment had looked to the *narr.* as his guide. But we must take care that people's rights are not sacrificed for want of prudent precautions. The judgment entered, however, only concluded that which was legally set forth in the *narr.* as the cause of action. But as the sequel will show that the proceedings eventuated in a decree in harmony, so far as the plaintiff in error is concerned with the *narr.*, we need not insist on this as mere law.

The first inquest was set aside, and an *alias* writ issued, on which the inquest divided the land into three purparts. The plaintiff in error filed exceptions, and it was set aside. The counsel for the plaintiff in this proceeding, also united in wishing it set aside, to enable him to bring upon the record the heirs of Kerr. Being set aside, the case stood then as if no precept for partition had ever issued in pursuance of the judgment *quod partitio fiat.* Immediately after this order, and within a few days at most, an agreement was entered into between Cairns, the demandant, and McConnell and wife, by which it was agreed that the court should reinstate the last inquest, and decree a division of the land into three parts, one portion equal to the amount claimed in the *narr.*, to the demandant, one to McConnell and wife, and one to the heirs of Kerr, and they provided

[Blackwell *v.* Cameron.]

the form of a decree which was adopted by the court.   Kerr's heirs and their alienee, Noggle, by a supplemental agreement, became parties to the arrangement, and all this was made part of the decree.   There was no notice to Blackwell of these proceedings whatever, and no assent by him to them in any shape, manner, or form.   Nor is he noticed in any way in the decree.   This was quite in harmony with the *narr.*, in which, as a party, he was in effect entirely dropped.   Now, it was this decree which the learned judge seemed to think estopped the plaintiff in error from giving evidence to show that the plaintiffs below had no right to any part of the land in controversy claimed by virtue of the proceedings in partition.   In this we think he was wrong. Having succeeded in setting aside the report of the inquest, it could not be reinstated as to plaintiff in error without notice, and this he had not.   Nor do I think this was at all intended, considering the form of the amicable proceeding, although the court below thought that was the effect of the decree. If it was, then without his assent, knowledge, or co-operation, or that of his counsel, so far as appears, he would be bound by an agreement between other parties, and by a decree of which he had no prior notice, in which he was neither named nor referred to.   This could not be upon any principle of justice.   Notice of, or consent to, the decree, is its very foundation-stone, and without it, it cannot stand.   The decree grew out of an amicable arrangement between the parties to it, and bound nobody but themselves.   As it took no notice of Blackwell, it was (if that had not happened before) a discontinuance as to him, and there being no decree against him, it was obviously erroneous to hold that he was concluded by the proceedings in partition from showing what he proposed in his offer.

As these proceedings were in the line of the plaintiffs' title, we are bound to presume that they had notice of them, and consequently of their force and effect.   They therefore have no ground to assert that they were misled by a decree in their favour, by which the plaintiff in error was estopped from asserting title to the land in controversy.   Of course the former eject-ment had no conclusive effect of this kind.   It was but one verdict and judgment out of three if it did embrace the land in question.

Judgment reversed, and a *venire de novo* awarded.